## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**PARKCREST BUILDERS, LLC**                          **CIVIL ACTION**

**VERSUS**                                                        **NO: 15-150**
                                                                        *C/W 15-1531*
                                                                        *Pertains to 15-150*

**HOUSING AUTHORITY OF NEW**                    **SECTION: "G" (1)**
**ORLEANS (HANO)**                                        *Flag Section "C"*

### ORDER AND REASONS

Before the Court is Parkcrest Builders, LLC's Motion to Compel Arbitration (Rec. Doc. 14). After reviewing the parties' memoranda, the record and the applicable law, the Court hereby GRANTS the motion.

### I. Background

On May 8, 2013, plaintiff, Parkcrest Builders, LLC ("Parkcrest"), entered into a contract with defendant, the Housing Authority of New Orleans ("HANO"), for the construction of the Guste III New Affordable Housing Units.[1] The General Conditions of the contract were set forth in HUD Form 5370.[2] Parkcrest claims that the specifications included a requirement that all of the lumber be treated against wood-destroying insects with borate, and that the moisture content of the lumber could not exceed 19%.[3] Because Parkcrest viewed these requirements as "unobtainable," it submitted a request for a specification change.[4] Seventy-five days after the change request was

---

[1] Rec. Doc. 1.

[2] Rec. Doc. 1-8.

[3] Rec. Doc. 1.

[4] *Id.*

submitted, HANO agreed to change the specifications to provide for the use of borate pressure treated sill plate and a field-applied sprayed borate treatment for all other rough frame materials.[5] Parkcrest claims that the time required to change the specification, along with other delays regarding "numerous hidden conditions at the worksite" and other framing issues, caused a delay in the project.[6]  As a result, Parkcrest submitted a Delay Claim and Amended Delay Claim (collectively "delay claim") to HANO seeking additional compensation.[7]  By letter dated November 19, 2014, Gregg Fortner, Executive Director of HANO, denied Parkcrest's delay claim.[8]

On November 20, 2014, HANO recorded a Notice of Default dated October 27, 2014, in the Conveyance Records of Orleans Parish stating that Parkcrest defaulted on the contract by failing to complete certain work by the date of substantial completion.[9]  On November 26, 2014, HANO recorded another Notice of Default, dated November 17, 2014, in the Mortgage Records of Orleans Parish stating that Parkcrest defaulted by failing to complete another portion of the work by its substantial completion date.[10]

On December 23, 2014, Parkcrest sought appeal of HANO's denial of its delay claim, HANO's October 27, 2014, Notice of Default, and HANO's November 17, 2014, Notice of Default.

---

[5]  *Id.*

[6]  *Id.*

[7]  *Id.*; *see also* Rec. Doc. 1-3.

[8]  *Id.*; *see also* Rec. Doc. 1-4.

[9]  *Id.*; *see also* Rec. Doc. 1-5.

[10]  *Id.*; *see also* Rec. Doc. 1-6.

2

Parkcrest appointed Danny G. Shaw of Cordray & Schneller as an independent arbitrator to resolve the issues pursuant to the dispute resolution clause of the contract.[11]  HANO refused to participate in arbitration.[12] Thus, on January 22, 2015, Parkcrest filed this action seeking an order compelling HANO to participate in arbitration, or alternatively, a declaratory judgment finding that the project delays were attributable to HANO, not Parkcrest, and granting the relief sought in the Parkcrest's delay claim; and, declaring that the Notices of Default are null and void *ab initio* and directing their removal from the public records.[13]

On April 2, 2015, Parkcrest filed the instant motion to compel arbitration, arguing that HANO is required to submit the dispute to arbitration pursuant to the contract and the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*[14] Clause 31 of the contract, titled "Disputes" provides:

> (a) "Claim," as used in this clause, means a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to the contract.  A claim arising under the contract, unlike a claim relating to the contract, is a claim that can be resolved under a contract clause that provides for the relief sought by the claimant.  A voucher, invoice, or other routine request for payment that is not in dispute when submitted is not a claim.  The submission may be converted to a claim by complying with the requirements of this clause, if it is disputed either as to liability or amount or is not acted upon in a reasonable time.

> (b) Except for disputes arising under the clauses entitled Labor Standards - Davis Bacon and Related Acts, herein, all disputes arising under or relating to this contract, including any claims for damages

---

[11]  *Id.*; *see also* Rec. Doc. 1-7.

[12]  Rec. Doc. 14.

[13]  Rec. Doc. 1.

[14]  Rec. Doc. 14-1.

for the alleged breach thereof which are not disposed of by agreement, shall be resolved under this clause.

(c) All claims by the Contractor shall be made in writing and submitted to the Contracting Officer[15] for a written decision. A claim by the [HANO] against the Contractor shall be subject to a written decision by the Contracting Officer.

(d) The Contracting Officer shall, within 60 (unless otherwise indicated) days after receipt of the request, decide the claim or notify the Contractor of the date by which the decision will be made.

(e) The Contracting Officer's decision shall be final unless the Contractor (1) appeals in writing to a higher level in the [HANO] in accordance with the [HANO's] policy and procedure, (2) refers the appeal to an independent mediator or arbitrator, or (3) files suit in a court of competent jurisdiction. Such appeal must be made within (30 unless otherwise indicated) days after receipt of the Contracting Officer's decision.

(f) The Contractor shall proceed diligently with performance of this contract, pending final resolution of any request for relief, claim, appeal, or action arising under or relating to the contract, and comply with any decision of the Contracting Officer.[16]

HANO argues that it is not required to arbitrate because the project was performed pursuant to the Louisiana Public Works Act ("LPWA"),[17] and the contractual arbitration clause conflicts with La. Rev. Stat. § 38:2217.[18] Alternatively, HANO argues that Parkcrest is not entitled to invoke the

---

[15] "Contracting Officer" is defined in Clause 1(c) as:

the person delegated the authority by the [HANO] to enter into, administer, and/or terminate this contract and designated as such in writhing to the Contractor. The term includes any successor Contracting Officer and any duly authorized representative of the Contracting Officer also designated in writing. The Contracting Officer shall be deemed the authorized agent of the [HANO] in all dealings with the Contractor.

[16] Rec. Doc. 1-8.

[17] La. Rev. Stat. § 38:2241, *et seq.*

[18] Rec. Doc. 18.

contract's arbitration clause because Parkcrest did not exhaust its administrative remedies under the contract.[19] HANO contends that Parkcrest did not submit its delay claim to the "Contracting Officer" as required by the contract.[20]

In its reply brief, Parkcrest asserts that it selected an independent arbitrator because HANO refused to participate in the selection of an arbitrator.[21] Parkcrest contends that the FAA authorizes and obligates this Court to appoint an arbitrator, and suggests that this Court appoint Mr. Shaw.[22] Parkcrest also argues that it exhausted its administrative remedies by submitting its claim to Marc Bourgeois, whom HANO designated as an authorized representative of the Contracting Officer.[23]

## II.  Law & Analysis

### A.     Whether the Federal Arbitration Act Applies to This Dispute

In *Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*, the United States Court of Appeals for the Fifth Circuit explained that the FAA was "in large part motivated by the goal of eliminating the courts' historic hostility to arbitration agreements."[24] Thus, "Section 2 of the FAA puts arbitration

---

[19] *Id.* In its Answer, HANO made a counterclaim against Parkcrest for breach of contract related to Parckcrest's defective work and project delays. Rec. Doc. 13.  On August 12, 2015, Parkcrest filed a Supplemental and Amended Complaint to add additional facts regarding project delays. Rec. Doc. 39.  Parkcrest also alleges that on April 10, 2015, HANO sent it a Notice of Final Default and Termination due to Parkcrest's "poor performance and untimely delivery of work." *Id.* Parkcrest seeks a declaratory judgment stating that it was not in default because the delays were caused by HANO or were beyond Parkcrest's control. *Id.* Parkcrest seeks damages for the termination. *Id.*  Issues raised in HANO's counterclaim and Parkcrest's Supplemental and Amended Complaint are not specifically before the Court on Parkcrest's motion to compel arbitration.

[20]  Rec. Doc. 18.

[21]  Rec. Doc. 26.

[22]  *Id.*

[23]  *Id.*

[24]  379 F.3d 159, 166 (5th Cir. 2004) (citations omitted).

agreements on the same footing as other contracts."[25] This means that, "as a matter of federal law, arbitration agreements and clauses are to be enforced unless they are invalid under principles of state law that govern all contracts."[26]

In resolving the motion presently before the Court, it is first necessary to determine whether the action falls within the scope of the FAA. On this point, the FAA, as codified at 9 U.S.C. §§ 1-2, provides the basis for the Court's inquiry. Section 2 states that:

> A **written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction**, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.[27]

Section 1 defines "commerce" as meaning "commerce among the several States or with foreign nations."[28] In *Perry v. Thomas*, the United States Supreme Court concluded that the FAA "provide[s] for the enforcement of arbitration agreements within the full reach of the Commerce Clause [of the United States Constitution]."[29]

The FAA, as codified at 9 U.S.C. § 3, gives federal courts authority to stay litigation pending arbitration; it provides as follows:

> If any suit or proceeding be brought in any of the courts of the United States upon **any issue referable to arbitration under an agreement in writing for such arbitration**,

---

[25] *Id.*

[26] *Id.*

[27] 9 U.S.C. § 2 (emphasis added).

[28] 9 U.S.C. § 1.

[29] 482 U.S. 483, 490 (1987). In *Perry*, the Supreme Court held that § 2 of the FAA preempted a California statute that provided a judicial forum for actions seeking to collect wages, notwithstanding any arbitration agreement between the parties. *Id.* at 484; 492.

the court in which such suit is pending, **upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement**, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.[30]

As the United States Court of Appeals for the Fifth Circuit has observed, Section 3 of the FAA is mandatory, providing that federal courts "*shall* on application of one of the parties stay the trial of the action."[31]

Section 4 of the FAA covers motions to compel arbitration; it provides:

A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.[32]

In this case, the parties agree that the contract includes an arbitration clause.[33] Moreover, HANO does not dispute that the FAA applies to this dispute. The FAA applies to contracts evidencing a transaction involving commerce. Parkcrest and HANO engaged in the performance of a contract as citizens of different states, which means that the transaction involved interstate commerce and the FAA applies.[34] Accordingly, the Court concludes that the Arbitration Agreement

---

[30] 9 U.S.C. § 3 (emphasis added).

[31] *Waste Mgmt, Inc. v. Residuos Industriales Multiquim, S.A. de C.V.*, 372 F.3d 339, 342–43, 346 (5th Cir. 2004) (construing 9 U.S.C. § 3, reasoning that "[t]he grammatical structure of this sentence would seem to make clear that any of the parties to the suit can apply to the court for a mandatory stay, and the court must grant the stay if the claim at issue is indeed covered by the arbitration agreement," and ordering the district court to grant a nonsignatory's motion to compel arbitration).

[32] 9 U.S.C. § 4.

[33] *See* Rec. Docs. 14, 18.

[34] *Atl. Aviation, Inc. v. EBM Grp., Inc.*, 11 F.3d 1276, 1280 (5th Cir. 1994).

falls within the scope of the FAA. It will therefore consider whether the arbitration clause is enforceable.

## B.      Enforceability of the Arbitration Clause

There is a strong presumption in favor of arbitrability.[35]  Any doubts about the arbitrability of a dispute should be resolved in favor of arbitration.[36]  To overcome this presumption, there must be clear evidence that the parties did not intend the claim to be arbitrable.[37]

The United States Court of Appeals for the Fifth Circuit has established a two-step inquiry to determine if an arbitration clause is enforceable.[38]  First, a court determines whether the parties agreed to arbitrate.[39] This involves determining both whether there was a valid agreement to arbitrate and whether the dispute in question falls within the scope of the arbitration clause.[40]  Second, a court determines whether any legal constraints external to the agreement foreclose the arbitration of claims.[41]

The FAA provides that a "written provision in . . . a contract . . . to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist

---

[35]  *See E.E.O. C. v. Waffle House*, 534 U.S. 279, 289 (2002).

[36]  *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).

[37]  *Harvey v. Joyce*, 199 F.3d 790, 793 (5th Cir. 2000).

[38]  *Fleetwood Enters., Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002).

[39]  *Id.*

[40]  *Id.*

[41]  *Id.*

at law or in equity for the revocation of any contract."[42] Section 2 of the FAA "is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary."[43] "[T]he strong federal policy favoring arbitration preempts state laws that act to limit the availability of arbitration."[44] More specifically, "the FAA will preempt any state laws that contradict the purpose of the FAA by requir[ing] a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration."[45]

As noted above, the parties agree that the contract includes an arbitration clause.[46] HANO does not dispute that Parkcrest's claims regarding the delay claims and Notices of Default fall within the clause.[47] Rather, HANO argues that the arbitration clause is unenforceable because it conflicts with La. Rev. Stat. § 38:2217, which provides:

> In all public building, construction or other contracts which do not provide the right to independent arbitration with both parties having equal authority in selection of the arbitrator or arbitrators, the right of each party to such contract to judicial review of and redress for any action, determination or interpretation made under or with respect to such contract shall not be denied. In any such judicial action, no prior nonjudicial decision, determination or interpretation shall have any binding or conclusive or presumptive effect, nor shall there be any limitation upon the evidence which may be introduced in such action except the limitations arising out of the application of

---

[42] 9 U.S.C. § 2.

[43] *Moses H. Cone*, 460 U.S. at 24.

[44] *Saturn Distrib. Corp. v. Paramount Saturn, Ltd.*, 326 F.3d 684, 687 (5th Cir. 2003) (citing *Southland Corp. v. Keating*, 465 U.S. 1, 16 (1984)).

[45] *Davis v. EGL Eagle Global Logistics L.P.*, 243 F. App'x 39, 44 (5th Cir. 2007) (quotations and citations omitted).

[46] *See* Rec. Docs. 14, 18.

[47] Rec. Doc. 18.

9

the rules of evidence applicable in courts of this state. The provisions
of this Section may not be waived.

HANO contends that the arbitration agreement conflicts with the statute because it did not have

equal authority in selecting the arbitrator as the arbitration agreement permits Parkcrest to refer the

matter to an independent arbitrator without input from HANO.[48]  Thus, HANO argues that it

reserves its right to judicial review under La. Rev. Stat. § 38:2217.[49] This interpretation of La. Rev.

Stat. § 38:2217 would restrict the enforceability of arbitration agreements in public contracts that

do not provide the parties with equal authority in selecting the arbitrator. Because this restriction

would conflict with the FAA's principles of enforcing arbitration agreements, under HANO's

interpretation, La. Rev. Stat. § 38:2217 would likely be preempted by the FAA.

However, the Court need not reach the issue of preemption because, even applying state law,

the arbitration clause is enforceable. In *J. Caldarera & Co. v. Louisiana Stadium and Exposition

District*, the defendant argued that the arbitration clause should not be binding on the parties because

the contract did not provide for the independent selection of an arbitrator pursuant to La. Rev. Stat.

§ 38:2217.[50] The Louisiana Fifth Circuit Court of Appeal rejected this assertion, holding that the trial

court did not err in ordering the parties to proceed to arbitration because Louisiana Arbitration Law

permitted the parties to select an independent arbitrator, and if the parties could not agree, they could

apply to the trial court for an appointment of an arbitrator by the trial judge.[51] The Louisiana Third

Circuit Court of Appeal has also held that an arbitration clause of a contract was enforceable even

---

[48] *Id.*

[49]  *Id.*

[50]   725 So. 2d 549, 550–51 (La. App. 5 Cir. 1998).

[51]   *Id.* at 552–53 (citing La. Rev. Stat. § 9:4204).

though the contract did not provide for the independent selection of an arbitrator pursuant to La. Rev. Stat. § 38:2217, finding that "[t]here is no statutory requirement that the provisions of an arbitration clause must specifically delineate the procedures for the arbitration process for the arbitration clause to be valid and enforceable."[52]

Here, the arbitration clause does not expressly provide that both parties have equal authority to select an arbitrator. However, Louisiana courts have held that the failure to include such a provision does not render the arbitration clause unenforceable because there is no statutory requirement that the provisions of the arbitration clause must specifically delineate the procedures for selecting an arbitrator.[53] Accordingly, the Court finds that the arbitration clause is enforceable under both the FAA and Louisiana law.

## C.    Parkcrest's Exhaustion of Administrative Remedies

HANO also argues that Parkcrest cannot procedurally invoke the arbitration clause because it did not exhaust its administrative remedies under the contract.[54] Specifically, HANO argues that Parkcrest sent its claims to HANO's project manager rather than HANO's "Contracting Officer" as defined in the contract.[55]  Parkcrest contends that HANO designated the project manager as a "duly authorized representative," noting that it was the project manager and not the Contracting Officer that issued Parkcrest the notices of default.[56] Furthermore, Parkcrest argues that HANO cannot claim

---

[52] *Cajun Contractors, Inc. v. Lafayette Consol. Gov't*, 715 So. 2d 588, 591 (La. App. 3 Cir. 1998), *rev'd on other grounds*, 723 So. 2d 968 (La. 1998).

[53] *Id.*

[54]   Rec. Doc. 18.

[55]   *Id.* at 4.

[56] *See* Rec. Doc. 26 at 2–3.

that its Contracting Officer did not receive Parkcrest's claims and therefore HANO was not prejudiced even if Parkcrest technically failed to comply with the grievance procedure provided in the contract.[57]

Whether or not HANO's argument has merit, it can be categorized as an issue of "procedural arbitrability."[58] That is, HANO's argument centers on whether Parkcrest "complied with the agreement's procedural rules."[59] With few exceptions, issues of procedural arbitrability are decided by an arbitrator.[60] Those exceptions apply only where a court can confidently conclude both that the claim before the court is strictly procedural and that the claim should operate to bar arbitration altogether.[61] An exception is appropriate only if no "rational mind" could question that the parties intended a breach of a given procedural provision in question to preclude arbitration and that a breach of that procedural provision was clear.[62] In *General Warehousemen and Helpers Union Local 767 v. Albertson's Distribution, Inc.*, the Fifth Circuit declined to apply an exception to the procedural arbitrability rule where it found that there were disputes of fact remaining as to whether one of the parties complied with contractual grievance procedures before seeking arbitration.[63]

---

[57]   *Id.* at 3.

[58]   *See Gen. Warehousemen and Helpers Union Local 767 v. Albertson's Distribution, Inc.*, 331 F.3d 485, 487–88 (5th Cir. 2003).

[59]   *Id.*

[60]   *Id.* (citing *John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543 (1964)).

[61]   *Id.*

[62]   *Id.*

[63]   *Id.* at 490–91; *see also Allen v. Apollo Group, Inc.*, Civ. A. 04-3041, 2004 WL 3119918 at *8 (S.D. Tex. Nov. 9, 2004) (applying exception where there was "no factual dispute" as to the parties' conduct or whether parties complied with contractually required grievance procedures).

In this case, there are factual disputes as to whether or not Parkcrest exhausted the grievance procedures provided in the contract.  It is unclear on the record before the Court whether or not HANO's project manager was a "duly authorized representative" or whether HANO's Contracting Officer effectively received notice of Parkcrest's claim, such that an adjudicator could reasonably conclude that Parkcrest sufficiently complied with the contract's grievance procedures.  As such, the Court follows the Fifth Circuit's decision in *General Warehousemen* by not applying an exception to the general procedural arbitrability rule. The issue of whether or not Parkcrest complied with the contract's grievance procedures should be decided by an arbitrator.

**D.     The Arbitrator**

HANO objects to Parkcrest's chosen arbitrator, Danny G. Shaw, arguing that he is not "independent" because he was selected exclusively by Parkcrest.[64] In response, Parkcrest asserts that it selected an independent arbitrator because HANO refused to participate in the selection process.[65] Parkcrest contends that the FAA "authorizes and obligates this Court to appoint the arbitrator."[66]

The FAA gives the Court authority to appoint an arbitrator if an agreement does not provide a method for selecting an arbitrator or if a party fails to avail itself of a method provided in the agreement. The FAA provides in pertinent part:

> If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed; but if no method be provided therein, or if a method be provided and any party thereto shall fail to avail himself of such method, or if for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire, or in filling a vacancy, then

---

[64] Rec. Doc. 18 at 3.

[65] Rec. Doc. 26 at 2.

[66] *Id.*

upon the application of either party to the controversy the court shall
designate and appoint an arbitrator or arbitrators or umpire, as the
case may require, who shall act under the said agreement with the
same force and effect as if he or they had been specifically named
therein; and unless otherwise provided in the agreement the
arbitration shall be by a single arbitrator.[67]

In *BP Exploration Libya Ltd. v. ExxonMobil Libya Ltd*, the Fifth Circuit noted that while
"the FAA expressly favors the selection of arbitrators by parties rather than courts . . . 9 U.S.C. §
5 authorizes a court to intervene to select an arbitrator upon application of a party, in three instances:
(1) if the arbitration agreement does not provide a method for selecting arbitrators; (2) if the
arbitration agreement provides a method for selecting arbitrators but any party to the agreement has
failed to follow that method; or (3) if there is a lapse in the naming of an arbitrator or arbitrators."[68]
There, the Fifth Circuit recommended that the district court should first order the parties to appoint
an arbitrator, and for the district court to select the arbitrator itself if the parties were unable to agree
by a certain date.[69]

Here, Plaintiff has requested that the Court appoint an arbitrator, namely Danny G. Shaw,
and the arbitration agreement does not provide a method for the selection of an arbitrator.
Accordingly, the Court has authority to select an arbitrator pursuant to 9 U.S.C. § 5. However,
because the FAA expressly favors the selection of an arbitrator by the parties rather than the Court,
the Court orders that the parties confer and select an arbitrator of their mutual choosing on or before
January 22, 2016.  If the parties reach an agreement to select an arbitrator by that date, they shall

---

[67] 9 U.S.C. § 5.

[68]  689 F.3d 481, 490–91 (5th Cir. 2012) (internal citations and quotation marks omitted).

[69] *Id.* at 497.

14

jointly notice the Court of their decision and promptly initiate arbitration, without further action of the Court being necessary. Should the parties be unable to come to an agreement on the selection of an arbitrator, each party shall submit to the Court the name and credentials of three arbitrators no later than January 25, 2016. The Court will soon thereafter issue an order selecting an arbitrator and thereby allow the parties to promptly initiate arbitration.

**E.      Additional Briefing from the Parties**

After Parkcrest filed its motion to compel arbitration in the instant case, it filed another case against HANO in the Eastern District of Louisiana, civil action number 15-1531, which was consolidated with this case. Given that the Court will now compel the parties to arbitrate and will stay and administratively close civil action number 15-150, the Court orders that the parties advise the Court in writing as to whether the Court should also stay and administratively close the consolidated civil action number 15-1531.

### III. Conclusion

Based on the foregoing,

**IT IS HEREBY ORDERED** that Parkcrest's Motion to Compel Arbitration is **GRANTED.**

**IT IS FURTHER ORDERED** that the parties have until January 22, 2016, to notify the Court of their joint selection of an arbitrator; in the case the parties jointly select an arbitrator, the parties shall promptly initiate arbitration proceedings without further action of the Court.

**IT IS FURTHER ORDER** that—should the parties be unable to notify the Court of their joint selection of an arbitrator by January 22, 2016—each party shall submit to the Court the name

15

and credentials of three arbitrators by January 25, 2016; the Court will timely select an arbitrator after that date and the parties shall thereafter promptly initiate arbitration proceedings.

**IT IS FURTHER ORDERED** that after an arbitrator is selected this matter will be **STAYED AND ADMINISTRATIVELY CLOSED** pending arbitration.

**IT IS FURTHER ORDERED** that the parties shall advise the Court, in writing, by January 22, 2016, whether or not the consolidated civil action No. 15-1531, should also be stayed and administratively closed pending arbitration.

**NEW ORLEANS, LOUISIANA,** this __13th__ day of January, 2016.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

16